**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIA E. MEDINA, Individually, MARIA E. MEDINA, Administrator of the Estate of Edvin Medina, Deceased, MARIA E. MEDINA, Guardian Ad Litem for G.M., E.P, and T.L., Minors,<br><br>Plaintiffs<br><br>v.<br><br>DAIMLER TRUCKS NORTH AMERICA, LLC, A Daimler Company, THOMAS J. O'NEIL, Individually, and T.P. SAMPSON COMPANY, INC.<br><br>Defendants. | Civil Action No. 10-623 (JLL)<br><br>OPINION |

**LINARES, District Judge.**

This matter comes before the Court by way of Plaintiff Maria E. Medina ("Plaintiff")'s motion to preclude Keven Granat ("Mr. Granat"), Jon S. Olson ("Mr. Olson"), and Jacob L. Fisher ("Dr. Fisher"), experts for Defendant Daimler Trucks North America, LLC ("Defendants") pursuant to Rule 702 of the Federal Rules of Evidence. (ECF No. 83). The Court has considered the submissions made in support of and in opposition to the instant motion. For the reasons that follow, Plaintiff's motion to preclude the experts, (ECF No. 83), of Mr. Granat, Mr. Olson, and Dr. Fisher is **denied**.

1

## I.    BACKGROUND

### A. General Case Summary

The Court has previously articulated the relevant factual background in its Opinion regarding Defendant's Motion for Summary Judgment. (ECF No. 77). Therefore, the Court briefly restates the following. On February 5, 2008, at approximately 7:20 AM, Thomas O'Neill ("O'Neill") lost control of his white minivan as he was crossing an overpass on Interstate 91 in Brattleboro, Vermont. (Docket #58-4: 1; Exhibit A). The minivan struck the left and right side guardrails and eventually came to a halt on the overpass. *Id.* at 6-7. Moments later, Plaintiff's husband, Edvin Medina ("Medina"), approached the overpass driving a tractor which was pulling a 54-foot trailer. *Id.* at 1, 5, 14. Medina saw O'Neil's crashed minivan and took action to avoid hitting it. *Id.* at 5. As a consequence, the tractor-trailer driven by Medina crashed into the bridge guardrails and plummeted off the overpass through a high-voltage power line. *Id.* at 11-12. At some point after the tractor-trailer crashed into the guardrails, but before it fell off the bridge, the tractor caught on fire. *Id.* at 12. Though unseen, Medina was heard screaming from the burning tractor. (Docket #58-5: 33; Exhibit F at 95:5-7). He was pronounced dead at 9:37 AM. (Docket #58-4: 25, Exhibit C at 2). The medical examiner, Dr. Bundock, concluded that Medina died of blunt force trauma and thermal injuries. (Docket #58-4: 24, Exhibit C at 1).

Plaintiff alleges that a design defect in the truck that Medina was driving caused her late-husband's death. She contends, through George H. Meinschein's expert report, that "mounting the batteries on the outboard side of the frame rail and in close proximity to the fuel tank is a design defect that presented a contributory cause in the instant . . . fire[.]" (Docket #58-5: 44, Exhibit G at 4). According to Plaintiff, the fire was started by a shower of electric sparks that originated from the truck's battery box, which was located inches away from the driver side fuel tank. (*See*

*e.g.* Pl. Statement of Undisputed Material Facts, ¶29, "The left fuel tank was attached to the frame just below the driver's door and within inches of the metal battery box."). During the accident, the fuel tank was pierced and began spilling diesel, the batteries were ripped off the tractor, and the loose wires from the battery box caused electrical arcing, which ignited the fuel vapors and caused the fire. (Docket #58-5:44, Exhibit G at 4).

Plaintiff filed her Complaint on February 4, 2010. (Docket #1). Count I of the Complaint asserts a claim of design defect, Count II asserts a claim of wrongful death, and Counts III and IV assert claims of survivorship on behalf of Plaintiff and Medina's surviving children. (*Id.*) This Court has jurisdiction over the matter at hand pursuant to 28 U.S.C. §1332, as there is diversity between the parties and the amount in controversy exceeds the $75,000 minimum.

### B. Facts Pertinent to the Instant Motion

On January 23, 2015, Plaintiff moved to preclude Defendants' experts, Keven Granat, Jon S. Olson, and Jacob L. Fisher. (ECF Nos. 84 & 85). Plaintiff alleges that the Defendants' experts do not satisfy the standards required by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591-92 (1993). Plaintiff further claims that Defendants' experts rely on speculative and inconsequential facts.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Fed. R. Evid. 702. This Rule allows a witness qualified as an expert to give testimony if: (i) the testimony is based upon sufficient facts or data, (ii) the testimony is the product of reliable principles and methods, and (iii) the expert witness has applied the principles and methods reliably to the facts of the case. Fed .R. Evid. 702; *Schneider v. Fried*, 320 F.3d 396, 407 (3d Cir. 2003); *In re Paoli R.R.*

3

*Yard PCB Litig.*, 35 F.3d 717, 74 (3d Cir. 1994). The Third Circuit has explained that Rule 702 "embodies a trilogy of restrictions on expert testimony: qualification, reliability, and fit." *Schneider*, 320 F.3d at 404 (citing *In re Paoli*, 35 F.3d at 741–43). A District Court is required to act as a gatekeeper, preventing the admission of opinion testimony that does not meet these three requirements. *Id.* (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993)). The proponent of the evidence bears the burden of establishing the existence of each factor by a preponderance of the evidence. *Daubert*, 509 U.S. at 592; *In re Paoli*, 35 F.3d at 743–44. A court's rejection of expert testimony should be the exception rather than the rule. Fed. R. Evid. 702 Advisory Committee Note. As the Supreme Court noted in *Daubert*, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 595.

An expert's opinion is reliable if it is "based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003) (quoting *Daubert*, 509 U.S. at 589). "*Daubert* suggests several factors that a district court should take into account in evaluating whether a particular scientific methodology is reliable[.]" *In re Paoli*, 35 F.3d at 742. The factors that *Daubert* and this Court have already declared important include:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on *746 the methodology; and (8) the non-judicial uses to which the method has been put.

4

*Id.* at 742 n. 8 (citing *United States v. Downing*, 753 F.2d 1224, 1238–41 (3d Cir. 1985)).

The Third Circuit in *Kumho Tire*, however, makes clear that this list is non-exclusive and that each factor need not be applied in every case. The Court further explained that:

> [T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable. That is to say, a trial court should consider the specific factors identified in Daubert where they are reasonable measures of the reliability of expert testimony.

*Kumho Tire*, 526 U.S. at 152; *see also Milanowicz v. The Raymond Corp.*, 148 F.Supp.2d 525, 536 (D.N.J. 2001) (reconfiguring *Daubert* for application to "technical" or "other specialized" subjects such as engineering and identifying several factors for trial courts to consider in evaluating reliability, including relevant literature, evidence of industry practice, and product design and accident history). As such, "[t]he inquiry envisioned by Rule 702 is . . . a flexible one." *Daubert,* 509 U.S. at 594.

### III. <u>DISCUSSION</u>

Plaintiff argues that this Court should preclude Defendants' experts from testifying at trial. Plaintiff claims that the Defendants' experts do not satisfy the standards required by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591-92 (1993). The Court notes that much of Plaintiff's argument relates to the credibility of the experts, a matter reserved for trial. For the reasons set forth below, Plaintiff's motion to exclude the expert testimonies of Mr. Granat, Mr. Olson, and Mr. Fisher is denied.

#### A. Mr. Keven Granat

Keven Granat is Defendants' proffered expert in the field of accident reconstruction. He earned a master's degree in mechanical engineering from Purdue University and has over 20 years of experience working as an automotive engineer. According to Mr. Granat, his expert opinion is

5

based on the facts of the case, his experience as an automotive engineer, his formal training as an engineer, and his extensive review of the materials listed above.

Mr. Granat analyzed the crash involving Mr. Edvin Medina. Prior to drawing his conclusions, Mr. Granat investigated (1) the crash environment, (2) the vehicles involved, and (3) the drivers. (Docket #10-623, Exhibit S, at 2). Upon review of construction diagrams, aerial imagery, police reports, and numerous photographs, Mr. Granat created a scaled diagram of the bridge configuration as it existed at the time of the crash. Mr. Granat concluded that Mr. Medina "was operating his vehicle at a speed too great for the existing conditions." *Id.* at 7. Mr. Medina's excessive speed prevented him from retaining control over the vehicle under those circumstances, "and caused it to crash into the guardrails and through the bridge rail along I-91." *Id.* Finally, Mr. Granat stated: "[n]o characteristics of the . . . tractor caused the subject crash." *Id.*

Plaintiff opposes Mr. Granat's conclusions, claiming they failed to "form the basis for a reliable, admissible opinion." (Pl.'s Br. at 14). Specifically, Plaintiff asserts that "Granat's implication that excessive speed was the reason Medina 'perished' is legally deficient in analyzing a products liability claim." *Id.* at 11. Plaintiff's final contention is one of relevancy, claiming that Mr. Grant's opinion that no feature of the tractor caused the crash is irrelevant. *Id.* The Court finds Plaintiff's arguments unpersuasive.

However, Plaintiff has failed to convince this Court that Mr. Granat's opinions are unreliable, as they are based on widely accepted scientific methods and procedures. *See Altana Pharma AG v. Teva Pharms. USA, Inc.*, 2013 U.S. Dist. LEXIS 74211 at *8 (2013) ("The proponent of expert testimony need not prove that its expert is correct, but that the expert's 'opinion is based on valid reasoning and a reliable methodology'") (citing *Oddi v. Ford Motor Co.*, 234 F.3d 136, 145 (2000)). Indeed, not only does Mr. Granat have extensive experience

6

working as an automotive engineer, he used photogrammetric analysis, scaled diagrams, photographs, physical evidence, video, specifications, testimony, accepted accident reconstruction techniques, and other documentation in conducting his analysis. (Docket #10-623, Exhibit S, pg. 2-6). Plaintiff neglects to acknowledge this important fact, but rather, remarkably, claims Mr. Grant's opinions have no foundation. Therefore, the Court cannot find that Mr. Granat based his conclusions and opinions upon a subjective belief or unsupported speculation.

Plaintiff also fails to demonstrate how Mr. Granat neglected to apply the principles and methods reliably to the facts of this case. Plaintiff's criticisms of Mr. Granat's methodology, and the reliability and relevancy of his opinions, are, at their core, targeted to weight and credibility, not its admissibility. That is, Plaintiff opposes Mr. Granat's factual conclusions, not his credentials or methods. *See Oddi*, 234 F.3d at 145-46 ("The test of admissibility is not whether a particular scientific opinion has the best foundation or is demonstrably correct. Rather, the test is whether the particular opinion is based on valid reasoning and reliable methodology."). The alleged weaknesses of Mr. Granat's opinions are best left to the consideration of the jury, presented through cross-examination and other appropriate evidence at trial. *Kannankeril v. Terminix International, Inc.*, 128 F.3d 802, 806 (3d Cir. (1997) ("The analysis of the conclusions themselves is for the trier of fact when the expert is subjected to cross-examination.").

### B. Mr. Jon Olson

Jon S. Olson is a professional engineer, certified fire & explosion investigator, and a certified vehicle fire investigator. (Docket #10-623, Exhibit P, at 1-2). He received his Bachelor of Science in Mechanical Engineering Technology from Lake Superior State University and an MBA from Baker College. *Id.* at 1. He has worked as an automotive engineer for more than 20

years with education, experience, and training in automotive facilities and tooling design, engineering development and testing, computer-aided engineering, fire investigation, and forensic engineering disciplines. *Id.* at 2. Mr. Olson was hired to offer opinions regarding the sequence of events leading to the fire that occurred in Mr. Medina's tractor-trailer. *Id.* at 1. His report discusses "the principles of fire investigation, fire science, properties of diesel fuel, competent/available ignition source(s), sequence of events leading to the ignition of the first fuel ignited, and the spread of fire and subsequent involvement of secondary and tertiary fuels." *Id.*

Plaintiff asserts that because Mr. Olson's opinion relied on Mr. Granat's accident reconstruction, Mr. Olson's analysis must fail. *Id.* at 6. Plaintiff's argument fails to recognize that Federal Rule of Evidence 703 states that an expert may formulate an opinion based on facts or data that he or she did not personally observe. Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of *or* personally observed.") (emphasis added). Indeed, one of the possible sources of "facts or data" an expert may rely on to form his or her opinion is data gathered "outside of court and other than by his [or her] own perception." Fed. R. Evid. 703, Advisory Committee Notes. The Advisory Committee provides an example:

> [A] physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients and relatives, reports and opinions from nurses, technicians and other doctors, hospital records, and X rays. . . . His validation, expertly performed and subject to cross-examination, ought to suffice for judicial purposes.

*Id.* Similarly, Mr. Olson relied on a variety of sources in drawing his conclusions, including, but not limited to: numerous photos and videos of the accident scene; state police and fire department reports; and deposition testimony from witnesses to the accident, police officers, and the fire chief of the Brattleboro fire department. (Docket #10-623, Exhibit P, at 2-3).

Plaintiff fails to provide any authority indicating that Mr. Olson's reliance on his co-expert's work is improper. Given the plain language of Rule 703, the Court does not afford this argument much weight. Additionally, Plaintiff's claims regarding the flaws in Mr. Olson's methodology do not warrant excluding Mr. Olson's testimony at this juncture, particularly in light of this Court's finding that Mr. Granat's expert opinion was based on sufficient facts and data; Mr. Granat's testimony was the product of reliable principles and methods; and Mr. Granat applied the principles and methods reliably to the facts of this case. Fed. R. Evid. 702; *Schneider v. Fried*, 320 F.3d 396, 407 (3d Cir. 2003).

Finally, Plaintiff does not articulate *how* (if at all) Mr. Olson neglected to apply the principles and methods reliably to the facts of this case. Therefore, this Court finds that Mr. Olson's findings and conclusions regarding the sequence of the events leading to the fire that occurred in Mr. Medina's tractor-trailer "reliably flow from the facts known to the expert and the methodology used." *Heller v. Shaw Industries, Inc.*, 167 F.3d 146, 153 (3d Cir. 1999).

### C. Dr. Jacob L. Fisher

Jacob L. Fisher, Ph.D., was hired to perform a biomechanical analysis[1] of the tractor-trailer crash. (Docket #10-623, Exhibit Q, at 1). Dr. Fisher is a professional engineer and holds a Ph.D. in bioengineering from the University of Pennsylvania. (D's Br. at 10). He evaluated "Mr. Medina's occupant kinematics during the crash . . . determine[d] the biomechanical mechanisms . . . and assess[ed] the severity of the blunt force injuries detailed in his autopsy report." *Id.*

---

[1] A "study of biomechanics" is "the study of the action of external and internal forces on the living body, especially on the skeletal system." Biomechanical Definition, DICTIONARY.COM, http://dictionary.reference.com/browse/biomechanical?s=t.

For this analysis, Dr. Fisher relied on several sources in making findings and drawing his conclusions, including but not limited to: digital photographs of the accident scene; deposition testimony from witnesses to the accident, police officers, the fire chief of the Brattleboro fire department, and the medical examiner; autopsy records; a video of the accident scene; and published biomechanical data involving volunteers, instrumented dummies, and cadavers. The Court finds this reliance sufficient to overcome Plaintiff's purported *Daubert* obstacles. Plaintiff alleges that Dr. Fisher's theories have been contradicted, and that he has based his opinions and conclusions upon unsupported speculation. (Pl's Br. at 27). Plaintiff also claims that because Dr. Fisher's opinion relied on Mr. Granat's accident reconstruction, Dr. Fisher's analysis must fail. *Id.* at 6. As outlined above, Federal Rule of Evidence 703 holds that an expert may formulate an opinion based on facts or data that he or she did not personally observe. Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of *or* personally observed.") (emphasis added). Moreover, Plaintiff does not provide any support for the claim that Dr. Fisher may not rely on his co-expert's work. The Court notes that "the inquiry envisioned by Rule 702 is . . . a flexible one . . . the focus must be solely on principles and methodology, not on the conclusions they generate." *Daubert*, 509 U.S. at 594.

As Plaintiff, again, neglects to articulate why Dr. Fisher's testimony does not meet the flexible standards set forth in *Daubert*, rather than attacking his credibility and findings, Plaintiff has failed to give a sufficient reason to warrant excluding Dr. Fisher's testimony at this time. Furthermore, as described above, any alleged deficiencies of Dr. Fisher's conclusions are best left to the consideration of the jury. *Kannankeril*, 128 F.3d at 806. Additionally, Defendants' "burden is only to provide an expert opinion that is relevant and reliable and that will assist the trier of fact

. . . issues of credibility arise after the determination of admissibility. Credibility is for the jury." Id. at 809-10.

## IV. CONCLUSION

Based on the reasons set forth above, Plaintiff's motion to preclude Defendants' experts, (ECF No. 83), is **denied**.

An appropriate Order accompanies this Opinion.

Date:   March 31, 2015

José L. Linares  
United States District Judge